# EXHIBIT A

Gerald B. Singleton (SBN 208783)
gsingleton@singletonschreiber.com
Paul L. Starita (SBN 219573)
pstarita@singletonschreiber.com
Jon Cadieux (SBN 265155)
jcadieux@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Phone: (619) 771-3473

Attorneys for Plaintiffs

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF NAPA**

| | |
|---|---|
| PAVITT FAMILY VINEYARDS, LLC, a California Limited Liability Company, d/b/a PHIFER PAVITT WINE;<br>JACKSON WILLIAM PAVITT;<br>SUZANNE PHIFER PAVITT;<br>RHETT JAMES PAVITT;<br>SHANE H. PAVITT;<br>SUZANNE PHIFER PAVITT, as Trustee of the SHANE HOWARD PAVITT AND SUZANNE PHIFER PAVITT TRUST;<br>PESTONI BROTHERS, LLC, a California Limited Liability Company;<br>PESTONI ENTERPRISES LLC, a California Limited Liability Company;<br>TOD MICHAEL RATFIELD;<br>TOD M. RATFIELD AND KRISTINE M. GROMACKI PARTNERSHIP, d/b/a RATFIELD WINE VENTURES, and dba KRISTODD VINEYARDS;<br>KRISTINE MARIE GROMACKI;<br>RED THREAD WINE COMPANY, LLC, a Nevada Limited Liability Company, d/b/a RED THREAD WINES;<br>MANUEL RIOS;<br>1803 AETNA SPRINGS ROAD LLC, a California Limited Liability Company;<br>1801 POPE CANYON ROAD, LLC, a California Limited Liability Company;<br>ROBERT CRAIG WINERY, L.P., a California Limited Partnership;<br>TREVOR J. SHEEHAN;<br>THE BOURBON FUND LLC, a California Limited Liability Company; | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. TRESPASS;**<br>**2. NUISANCE;**<br>**3. NEGLIGENCE**<br>**4. VIOLATION OF HEALTH AND SAFETY CODE § 13007**<br>**5. VIOLATION OF HEALTH AND SAFETY CODE § 13008**<br><br>**JURY TRIAL DEMANDED** |

PRECISION VINEYARDS LLC, a California Limited Liability Company;
CAROLINE SKARWECKI;
KACI ANNE SNIDER a minor by and through their guardian ad litem, CAROLINE SKARWECKI;
TITLE IX VINEYARDS, LLC, a California Limited Liability Company;
LAURA ELIZABETH DAVIDSON-SMITH;
MICHELE MARY SMITH;
SPENCE VINEYARDS HOLDINGS, LLC, a Missouri Limited Liability Company;
DIANE SUSAN KLOR
STONEWRITER, LLC, a California Limited Liability Company, d/b/a WATERMARK
PHILLIP STEINSCHREIBER;
STRESSED VINES, LLC, a Texas Limited Liability Company;
BLAKE PAULI FORMAN a minor by and through their guardian ad litem, DAWN CHRISTIN PAULI FORMAN;
LEXI PAULI FORMAN;
TOBIAS DALE FORMAN;
DAWN CHRISTIN PAULI FORMAN;
DAWN PAULI FORMAN, as Trustee of The DAWN PAULI FORMAN AND TOBIAS FORMAN LIVING TRUST DATED APRIL 26, 2016; and
TOBIAS VINEYARDS LLC, a California Limited Liability Company,

Plaintiffs,

v.

ONE TRUE VINE, LLC, a California Limited Liability Company; 2339 PICKETT ROAD, LLC, a California Limited Liability Company; HUNDRED ACRE WINE ESTATE, LLC, a California Limited Liability Company; HUNDRED ACRE WINE GROUP VINEYARDS LLC, a California Limited Liability Company; HUNDRED ACRE WINE GROUP HOLDINGS LLC, a California Limited Liability Company; JAYSON WOODBRIDGE, an individual; JUAN LUIS GUTIERREZ MARFIL, an individual; and DOES 1-50, inclusive,

Defendants.

Through this Complaint, Plaintiffs, JACKSON WILLIAM PAVITT; PAVITT FAMILY VINEYARDS, LLC, a California Limited Liability Company, d/b/a PHIFER PAVITT WINE; SUZANNE PHIFER PAVITT; RHETT JAMES PAVITT; SHANE H. PAVITT; SUZANNE PHIFER PAVITT, as Trustee of the SHANE HOWARD PAVITT AND SUZANNE PHIFER PAVITT TRUST; PESTONI BROTHERS, LLC, a California Limited Liability Company; PESTONI ENTERPRISES LLC, a California Limited Liability Company; TOD MICHAEL RATFIELD; TOD M. RATFIELD AND KRISTINE M. GROMACKI PARTNERSHIP, d/b/a RATFIELD WINE VENTURES, and dba KRISTODD VINEYARDS; KRISTINE MARIE GROMACKI; RED THREAD WINE COMPANY, LLC, a Nevada Limited Liability Company, d/b/a RED THREAD WINES; MANUEL RIOS; 1803 AETNA SPRINGS ROAD LLC, a California Limited Liability Company; 1801 POPE CANYON ROAD, LLC, a California Limited Liability Company; ROBERT CRAIG WINERY, L.P., a California Limited Partnership; TREVOR J. SHEEHAN; THE BOURBON FUND LLC, a California Limited Liability Company; PRECISION VINEYARDS LLC, a California Limited Liability Company; CAROLINE SKARWECKI; KACI ANNE SNIDER a minor by and through their guardian ad litem, CAROLINE SKARWECKI; TITLE IX VINEYARDS, LLC, a California Limited Liability Company; LAURA ELIZABETH DAVIDSON-SMITH; MICHELE MARY SMITH; SPENCE VINEYARDS HOLDINGS, LLC, a Missouri Limited Liability Company; DIANE SUSAN KLOR STONEWRITER, LLC, a California Limited Liability Company, d/b/a WATERMARK PHILLIP STEINSCHREIBER; STRESSED VINES, LLC, a Texas Limited Liability Company; BLAKE PAULI FORMAN a minor by and through their guardian ad litem, DAWN CHRISTIN PAULI FORMAN; LEXI PAULI FORMAN; TOBIAS DALE FORMAN; DAWN CHRISTIN PAULI FORMAN; DAWN PAULI FORMAN, as Trustee of The DAWN PAULI FORMAN AND TOBIAS FORMAN LIVING TRUST DATED APRIL 26, 2016; and TOBIAS VINEYARDS LLC, a California Limited Liability Company; bring suit against Defendants ONE TRUE VINE, LLC, a California Limited Liability Company; 2339 PICKETT ROAD, LLC, a California Limited Liability Company; HUNDRED ACRE WINE ESTATE, LLC, a California Limited Liability Company; HUNDRED ACRE WINE GROUP VINEYARDS LLC, a California Limited Liability Company; HUNDRED ACRE WINE GROUP HOLDINGS LLC, a California Limited Liability Company; JAYSON WOODBRIDGE, an individual; JUAN LUIS GUTIERREZ MARFIL, an

individual and DOES 1-50:

## I.

## INTRODUCTION

1. This Complaint arises from a wildfire that ignited on or around 2343 Pickett Road, in Calistoga, California on August 21, 2025, which is now known as the "Pickett Fire."



**Flames of the Pickett Fire 8/21/25 – Photo via Nick Otto/Register**

2. The Pickett Fire ignited when contractor, JUAN LUIS GUTIERREZ MARFIL, took hot ashes from a wood-burning fireplace and dumped them on a pile of combustible debris in a designated burn-pit in the corner of JAYSON WOODBRIDGE's vineyard at 2343 Pickett Road while following WOODBRIDGE's directions to clean-up and prepare the property for a wedding he intended to host the following day. In doing so, Defendants violated multiple statutes, regulations, and Napa County ordinances, as well as basic common sense given the hot, dry, and windy conditions.

3. As a result of Defendants' negligent, reckless, and intentional conduct, the fire quickly spread out of Defendants' control. It burned more than 6,800 acres, damaged or destroyed multiple structures and improvements, and catastrophically impacted the local wine-making industry by decimating Plaintiffs' 2025 grape harvest.

//




**Smoke from Pickett Fire near Pickett Road 8/21/25 – Photo by Michele LeBlanc**

4. Plaintiffs are among the individuals and entities harmed by the Pickett Fire, which damaged or destroyed their vineyards, residences, and personal property. Because the Pickett Fire occurred just as Plaintiffs' grapes were approaching harvest, the significant amount of smoke it produced tainted Plaintiffs' grapes and rendered them unusable. As a result, they were unable to sell their 2025 crop, or make it into sellable wine, resulting in substantial and ongoing business losses.

5. Through this litigation, Plaintiffs seek just compensation, damages, and all other available remedies.

## II.

## PARTIES

### A. Plaintiffs

1. Plaintiffs are individuals and legal entities who owned, rented, resided, occupied, and/or operated businesses upon property located in Napa County during all times relevant to this Complaint.

2. Located in and around the Howell Mountain region, which the Federal Government has designated as an American Viticultural Area, Plaintiffs are grape-growers and wine-makers known for producing intensely concentrated, firmly structured, and age-worthy Cabernet Sauvignon and other high-end wines.

3. Plaintiffs have elected to join their individual lawsuits in a single action under rules of permissive joinder. Plaintiffs do not seek class certification or relief on any class-wide, collective, or other group basis, but instead seek damages and other remedies on an individual basis according to proof at trial, or through alternative dispute resolution efforts.

**B. Defendants**

4. Plaintiffs are informed and believe that Defendant JAYSON WOODBRIDGE lives on Pickett Road in Napa County. He is the founder, owner, and operator of HUNDRED ACRE WINE GROUP HOLDINGS LLC, which is the formal holding entity for ONE TRUE VINE, LLC., and HUNDRED ACRE WINE GROUP VINEYARDS, LLC, the entity that controls HUNDRED ACRE WINE ESTATE, LLC and 2339 PICKET ROAD, LLC.

5. Defendant HUNDRED ACRE WINE GROUP HOLDINGS LLC., is a California Limited Liability Company, authorized to do business in, and is doing business in, California. Its principal place of business is 1345 Railroad Avenue, Suite 2A, Saint Helena, CA, which is within Napa County. It controls ONE TRUE VINE, LLC, which owns and operates the vineyard where the Pickett Fire ignited.

6. Defendant ONE TRUE VINE, LLC is a California Limited Liability Company authorized to do business in, and is doing business in, California. Its principal place of business is located at 1345 Railroad Avenue, Suite 2A, Saint Helena, CA. Plaintiffs are informed and believed that ONE TRUE VINE, LLC owns the property at 2343 Pickett Road, where the fire originated. Based upon ONE TRUE VINE, LLC's filings with California's Secretary of State, WOODBRIDGE is its sole manager.

7. Plaintiffs are informed and believe that Defendant HUNDRED ACRE WINE GROUP VINEYARDS, LLC is a California Limited Liability Company authorized to do business in, and is doing business in, California. Its principal place of business is located at 1345 Railroad Avenue, Suite 2A, Saint Helena, CA. Plaintiffs are informed and believe that HUNDRED ACRE WINE GROUP VINEYARDS, LLC controls 2339 PICKETT ROAD, LLC.

//

//

8. Defendant HUNDRED ACRE WINE ESTATE, LLC is a California Limited Liability Company authorized to do business in, and is doing business in, California. Its principal place of business is located at 1345 Railroad Avenue, Suite 2A, Saint Helena, CA. Plaintiffs are informed and believe that HUNDRED ACRE WINE ESTATE, LLC operates the Hundred Acre winery at 2339 Pickett Road. Based upon HUNDRED ACRE WINE ESTATE, LLC's filings with California's Secretary of State, WOODBRIDGE is its sole manager.

9. Defendant 2339 PICKETT ROAD, LLC is a California Limited Liability Company, authorized to do business in, and is doing business in, California, with its principal place of business located at 1345 Railroad Avenue, Suite 2A, Saint Helena, CA. Plaintiffs are informed and believe that 2339 PICKETT ROAD, LLC owns the property at 2339 Pickett Road, which is adjacent to and forms one large vineyard with WOODBRIDGE's property at 2343 Pickett Road, where the fire originated. Based upon 2339 PICKETT ROAD, LLC's filings with California's Secretary of State, WOODBRIDGE is its sole manager.

10. Plaintiffs are informed and believe that Defendant JUAN LUIS GUTIERREZ MARFIL is a resident of Napa County and personally works for WOODBRIDGE or, in the alternative, ONE TRUE VINE LLC, HUNDRED ACRE WINE ESATATE, LLC, and/or 2339 PICKETT ROAD, LLC on a contract basis as a gardener and handyman. MARFIL was acting within the scope of his contractual duties or, in the alternative, at the express direction of WOODBRIDGE, when he ignited the burn pile at 2343 Pickett Road with hot ashes from WOODBRIDGE's fireplace on August 21, 2025.

11. Defendants are jointly and severally liable for each other's wrongful acts and omissions. These companies do not compete against one another but instead operate as a single enterprise, integrating their resources to achieve a common business purpose. These companies are so organized and controlled that one is a mere instrumentality, agent, and/or conduit of the other. JAYSON WOODBRIDGE is the owner and manager of each of his Limited Liability Companies, unilaterally directing business operations, setting policies, and making strategic decisions on their behalf.

//

//

12. Because Plaintiffs do not know the true names and capacities of Defendant Does 1 through 50, they are identified by these fictitious names as prescribed by Code of Civil Procedure section 474. These defendants are each directly and/or vicariously responsible, in some manner, for the alleged harms. When Plaintiffs learn these defendants' true names and capacities, Plaintiffs will seek leave to amend this pleading accordingly.

13. At all times relevant to this pleading, Defendants, and/or each of them: were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants; were operating within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture; and ratified and approved the acts of each other. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations and duties to Plaintiffs. In taking action to aid and abet and substantially assist with the commission of these wrongful acts and other wrongdoings, each of Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## III.

## JURISDICTION AND VENUE

14. The Napa County Superior Court has subject-matter jurisdiction over this unlimited civil case because the Pickett Fire and the damages it caused occurred within Napa County.

15. Plaintiff JAYSON WOODBRIDGE lives in Napa County with his wife, Helen, and conducts substantial business through his vineyards and wineries located within its borders, all of which are organized and headquartered in Napa County.

16. Defendant MARFIL is also a California resident, living and working in Napa County.

17. Accordingly, the Court's exercise of personal jurisdiction over these Defendants is consistent with the traditional notions of fair play and substantial justice. The amount in controversy exceeds the jurisdiction minimum of this Court and Napa County is the appropriate venue.

//

//

## V.

## FACTS

18. After a career as an investment banker, WOODBRIDGE launched his Hundred Acre wine enterprise in 1999, purchasing an already established vineyard in Napa County. He purchased several more vineyards over the next five years, including the property at 2343 Pickett Road, which forms one large vineyard with his adjacent winery, located at 2339 Pickett Road, and his nearby vineyard and residence at 2355 Pickett Road. (collectively, "the "Pickett Road properties").

### A. Defendants' Unlawful "Controlled Burn" Becomes a Catastrophic Wildfire

19. Napa County Ordinance, number 947 seeks to preserve agricultural land for wine production, restricting activities on land like the Pickett Road Properties to those necessary or accessory to the winery's operation. Uses above and beyond those expressly allowed under the ordinance require the property owner to obtain a special use permit from the County. Weddings are not expressly allowed under Ordinance number 947 and WOODBRIDGE did not possess a special use permit to hold weddings at his Pickett Road properties.

20. Nonetheless, WOODBRIDGE intended to host a wedding at his Hundred Acre winery on or about the weekend of August 23, 2025. On August 21, 2025, WOODBRIDGE directed his contractor, MARFIL, to build a fire with scrap wood in a newly-constructed outdoor fireplace at his Hundred Acre winery and heat-temper it in preparation for the upcoming wedding.

21. WOODBRIDGE also tasked MARFIL with cleaning up brush and debris around the Pickett Road properties to ensure they looked nice for the wedding guests.

22. WOODBRIDGE maintains a burn area on the edge of his 2343 Pickett Road property, which he regularly used to dispose of waste and debris in large bonfires.

23. Plaintiffs are informed and believe that, consistent with his past practice, WOODBRIDGE told one or more of his employees to pile up and ignite combustible debris in the burn area on August 21, 2025. When that employee refused, WOODBRIDGE directed MARFIL to do so.

24. WOODBRIDGE had previously heat-conditioned a wood-burning fireplace at his Hundred Acre winery for the upcoming wedding event. MARFIL collected the still-hot ashes from that fireplace and used them to ignite the pile of debris in the burn area. Plaintiffs are informed and believe

that Defendants' surveillance camera(s) captured video of MARFIL scraping ashes from the fireplace into a plastic bucket before dumping them onto the debris in the burn pit.

25. Predictably, the fire quickly got out of control amid the hot wind and dry vegetation, rapidly escaping from the intended burn area.



**Aerial Photo of Pickett Fire Area of Origin 9/24/25**

26. As the fire spread, someone at the 2343 Pickett Road property called 911 and told the emergency dispatch operator that a controlled burn had escaped containment.

27. Chapter 8.24.020 of Napa County's Municipal Code provides that "it is unlawful for any person to set fire or cause fire to be set out of doors at any time between April 1st and December 1st of any year without first obtaining a written fire permit from the constituted fire control authority within the area wherein the fire is to be set."

28. Chapter 8.24.050 of Napa's Municipal Code also allows the local Fire Authority to "suspend all out-of-doors burning," even with a permit, during periods of high fire risk.

29. Because of the extremely dry vegetation and high-risk of wildfire, CalFIRE suspended residential burn permits in Napa County as of June 23, 2025. That suspension was still in effect on August 21, 2025, meaning both outdoor fires started by Defendants that day (heat-conditioning the outdoor fireplace and burning debris in the burn pit) were unlawful.

**B. The Pickett Fire's Disastrous Impact Upon Plaintiffs' Vineyards and Wineries**

30. Defendants' willful, reckless, and negligent disregard for the law, their fellow wineries, and the safety of their community, caused the Pickett Fire, which burned for 17 days, forcing Plaintiffs to evacuate and damaging their vineyards, structures, and personal property.

31. In addition to damage caused by its heat and flames, the Pickett Fire generated a significant amount of smoke, which settled like a blanket over the region. It persisted for days after the fire had been extinguished, depositing soot, ash, and harmful particles on Plaintiffs' homes, vineyards and wineries.

32. That smoke, and the noxious compounds of which it is composed, also damaged Plaintiffs' wine-grapes through the effect of smoke-taint. The particulates and other chemical compounds present in wildfire smoke are absorbed into the grapes. These compounds are then released during the fermentation process, producing tainted sensory characteristics and unpleasant flavors in the finished wine. Smoke-taint renders the grapes unusable. Plaintiffs grow high-quality grapes for high-quality wine, which customers expect to present specific flavor profiles and characteristics. Selling a sub-par product made from smoke-tainted grapes would irreparably damage Plaintiffs' businesses by destroying their brand, market-share, and reputation.

33. Unfortunately, the Pickett Fire could not have stated at a worst time for Plaintiffs. As grapes develop higher sugar content during the veraison and post-veraison state, which occurs in mid- to late-summer, they become increasingly susceptible to the effects of smoke-taint. The Pickett Fire occurred in mid-August, while Plaintiffs' grapes were in this sugar-developing growth phase and at their most vulnerable. Unsurprisingly, Plaintiffs' 2025 harvest was decimated.

34. Post-fire test results of the grapes and juice showed chemical markers consistent with smoke-taint. Those Plaintiffs who fermented test batches found the resulting wine to be off-tasting and ashy. Plaintiffs were unable to sell the grapes or turn them into a sellable wine. Because they had no product to sell, despite incurring nearly the entire amount of costs to grow the fruit, Plaintiffs sustained substantial business losses in 2025 and 2026.

//

//

35. Beyond the lost sales revenue, Plaintiffs' absence from the wine market also damaged their respective brands and market share. Because Plaintiffs were prevented from releasing a 2025 vintage, consumers assume the winery is floundering or in decline and seek out wines from different regions and wineries. It will take years to rebuild the pre-fire goodwill and market share of Plaintiffs' businesses.

**C. Defendants' Prior Knowledge of the High Fire Risk and Disregard for Public Safety**

36. This wildfire was not the result of an "act of God" or other *force majeure*. This wildfire ignited because of Defendants' intentional, reckless, and negligent acts and omissions.

37. Given the high-fire risk, and the extremely severe harm to grape growers and wine makers should a fire occur, residents of Napa County's wine growing areas are acutely aware of the duty to refrain from conduct that might cause ignition and spread of fires, and the need to take appropriate precautions to eliminate or reduce the risk of that harm.

38. WOODBRIDGE knew, firsthand, the acute fire risk around the area in which his vineyards are located. In 2020, the Glass Fire ignited in the Deer Park region of Napa County. It burned for 23 days, destroyed 1,555 structures, and consumed 67,484 acres of land, including 80 acres of naturally occurring manzanitas, bay trees, oaks, and scrub brush on WOODBRIDGE's HUNDRED ACRE property.

39. The following year, WOODBRIDGE removed the burned trees and vegetation from these 80 acres and began planting additional grape vines in place of the natural vegetation, without the necessary permits and in violation of County law. Napa County issued a stop-work order and cited WOODBRIDGE for a number of violations. WOODBRIDGE responded by suing the County in 2022, alleging that the natural vegetation was a fire-risk and by removing it he created a "fire break" for "future wildfire events."

40. Napa County countersued, and Napa County Superior Court granted a restraining order preventing WOODBRIDGE from further planting. In March 2024, an appeals court affirmed the Superior Court's injunction.

//

//

41. This was not the only legal battle that WOODBRIDGE has fought over Napa County's rules, ordinances, and regulations. In 2023, WOODBRIDGE sued the County regarding water regulations that limit extractions from new wells to 0.3 acre-feet of water per acre annually. WOODBRIDGE wanted to dig new wells within 1,500 feet of a nearby stream and extract up to 1 acre-foot of water per acre from the proposed wells. Because WOODBRIDGE had not even applied for permits to dig new wells before initiating the litigation against the County, the Court dismissed his lawsuit.

42. WOODBRIDGE has not only feuded with Napa County; he is no longer a member of the Napa Valley Vintners trade group. It is clear from his various disputes with the County that WOODBRIDGE does not believe its ordinances and regulations should apply to him and routinely flouts their requirements.

43. MARFIL also understood the risk of fire in Napa County. Having regularly worked at the vineyard at 2343 Pickett Road three to four days a week for at least a decade before WOODBRIDGE purchased the property, MARFIL also experienced the 2020 Glass Fire and knew that WOODBRIDGE's instruction to incinerate debris in the burn pit carried a significant risk of igniting a wildfire. Presumably worried about losing his job, MARFIL carried out WOODBRIDGE's instructions anyway. Unsurprisingly, the Pickett Fire ignited as a result.

44. After the fire, WOODBRIDGE neither took responsibility, nor supported his worker, MARFIL. Rather, the day after the Pickett fire erupted, WOODBRIDGE reached out to the media, unprompted, to say that he learned about the fire when his wife called him in a panic because she saw flames near their house. WOODBRIDGE said he had, "no idea how the fire started" and blamed the high temperature and strong wind.

45. About a week later, WOODBRIDGE's public relations spokesperson, Sam Singer, released a different statement. This time, WOODBRIDGE said a contractor (MARFIL) had been tempering an outdoor fireplace and, after he finished, doused the ashes in a bucket of water and discarded them. His spokesperson also denied that WOODBRIDGE had been planning to host a wedding.

//

46. On September 15, 2025, WOODBRIDGE changed his story again, sending a letter through his attorney to CalFIRE, which indicated that the fire may have ignited from a faulty battery in a metal trailer parked on his property. WOODBRIDGE did not explain how the purported sparks from this battery could have escaped from the metal box in which the battery was contained.

47. According to CalFIRE law enforcement officers, MARFIL admitted that he had disposed of hot ashes into a burn pile, which caused the Pickett Fire. Napa County's District Attorney charged MARFIL with recklessly causing a fire of a structure or forest in violation of Penal Code section 452(c), which is a felony offense, on August 25, 2026. MARFIL entered a "not-guilty" plea at his September 9, 2026, arraignment. His next Court date is December 7, 2026.

## VI.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION - TRESPASS

**(Against All Defendants)**

48. All previous paragraphs are incorporated into this cause of action.

49. On August 21, 2025, Plaintiffs were the owners, tenants, and/or lawful occupiers of real properties in the area of the Pickett Fire.

50. Defendants negligently and/or recklessly started the Pickett Fire, which spread out of control and caused flames, smoke, particulates, or chemical compounds to enter and damage Plaintiffs' property.

51. Plaintiffs did <u>not</u> grant permission for any fire, smoke, particulates, or chemical compounds to enter their property.

52. This trespass was a substantial factor in causing Plaintiffs to suffer economic and non-economic damages including: destruction of and damage to real property, structures, and personal property; business losses; and discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, and emotional distress. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial.

//

//

53. Those Plaintiffs whose real property was under cultivation are also entitled to recover all reasonable attorneys' fees, expert fees, consultant fees, and litigation costs and expense, as allowed under Code of Civil Procedure section 1021.9

54. Consistent with WOODBRIDGE's history of flouting laws and County ordinances, Defendants acted intentionally, recklessly, negligently and with a conscious and malicious disregard to human life and safety in starting the Pickett Fire. This recklessness and conscious disregard were substantial factors in bringing about the Pickett Fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

**SECOND CAUSE OF ACTION - NUISANCE**

**(Against All Defendants)**

55. All previous paragraphs are incorporated into this cause of action.

56. On August 21, 2025, Plaintiffs were the owners, tenants, and/or lawful occupiers of real properties in the area of the Pickett Fire with the right to occupy, enjoy, and use those properties without Defendants' interference.

57. Defendants' actions and inactions created and permitted a condition to exist that: was harmful to health; offensive to the senses; obstructed and interfered with Plaintiffs' comfortable enjoyment of life and property; unlawfully obstructed the free passage or use, in the customary manner, of public streets and highways; and created a completely predictable fire hazard.

58. These conditions interfered with Plaintiffs' quiet enjoyment of their properties in a way unique to each Plaintiff.

59. These conditions also affected a substantial number of people at the same time and constituted a public nuisance pursuant to California Civil Code section 3479 (anything injurious to health, offensive to the senses or an obstruction of the free use of property, that interferes with the comfortable enjoyment of property) and section 3480 (affecting at the same time an entire community or a considerable number of persons), as well as California Public Resources Code section 4170 (uncontrolled fire burning on lands covered by flammable material, without proper precaution being taken to prevent its spread) and section 4171 (endangering public safety by fire hazard).

60. At no time did Plaintiffs consent to Defendants' actions and inactions in creating these conditions.

61. An ordinary person would be reasonably annoyed and disturbed by Defendants' actions and inactions in creating these conditions.

62. Defendants' actions and inactions in creating these conditions forced Plaintiffs to evacuate their property and were substantial factors in causing Plaintiffs to suffer economic and non-economic damages unique to each plaintiff (and different from damages suffered by other plaintiffs) including: destruction of and damage to real property, structures, and personal property; business losses; and discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, and emotional distress. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial.

63. The seriousness of the harm Defendants have caused Plaintiffs outweighs any public benefit that they may provide.

64. Consistent with WOODBRIDGE's history of flouting laws and County ordinances, Defendants acted intentionally, recklessly, negligently and with a conscious and malicious disregard to human life and safety in starting the Pickett Fire. This recklessness and conscious disregard were substantial factors in bringing about the Pickett Fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

## THIRD CAUSE OF ACTION - NEGLIGENCE

**(Against All Defendants)**

65. All previous paragraphs are incorporated into this cause of action.

66. Under California common law and California Civil Code §1714, "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person."

67. Defendants each have first-hand knowledge of the danger and risk of wildfires during dry summers in Napa County, including their experience with the 2020 Glass Fire.

//

68. Each Defendant owed a foreseeable duty of care to refrain from engaging in conduct that would unreasonably interfere with the safety, stability, and integrity of Plaintiffs, their business, and their property.

69. Defendants also owed a foreseeable duty of care to Napa Valley, its wineries, and winemakers, to refrain from engaging in conduct that would unreasonably interfere with the safety, stability, and integrity of those vineyards that supply grapes to Napa Valley wineries, and to protect such vineyards, vines, and grapes from harm.

70. In causing and/or failing to prevent, detect, and/or suppress the Pickett Fire, each Defendant negligently, carelessly, and wrongfully failed to exercise the requisite degree of care or skill that a reasonable person under the circumstances would employ, including:

a. Hiring, retaining, and failing to train or supervise workers, including with regard to properly and safely disposing of debris, handling hot ashes, and containing an intentionally set fire;

b. Using the Pickett Road properties to host unpermitted events unrelated to the cultivation of grapes or making of wine in violation of Napa County Ordinance, number 947;

c. Intentionally setting an outdoor fire to heat-temper a newly constructed fireplace on August 21, 2025, without a valid burn permit and during a period of high-fire risk weather;

d. Using hot ashes from the outdoor fireplace to combust flammable debris in the burn-area on WOODBRIDGE's property on August 21, 2025, without a valid burn permit and during a period of high-fire risk weather; and/or

e. Failing to take reasonable measures to control the fire in the burn pit and prevent it from escaping containment and spreading beyond the intended burn area.

71. Each Defendant negligently and carelessly breached their duty of care and failed to exercise ordinary or reasonable care and diligence to avoid loss and to minimize and mitigate damages which could have been prevented by reasonable efforts.

72. Defendants' failure to comply with laws, ordinances, and regulations regarding residential burns and outdoor recreational fires constitutes negligence *per se* because these laws, ordinances, and regulations are aimed at preventing the exact type of harm that Plaintiffs suffered – damage from a wildfire. In other words, Plaintiffs are within the class of individuals these statutes,

orders, and rules were implemented to protect.

73. Under common law and California Civil Code, sections 1714 and 3333, Defendants are liable for all costs and damages resulting from their negligent acts and omissions, as well as those of their employees and contractors.

74. Defendants' actions and inactions in creating these conditions were substantial factors in causing Plaintiffs to suffer economic and non-economic damages, including: destruction of and damage to real property, structures, and personal property; business losses; and discomfort, annoyance, inconvenience, mental anguish, loss of quiet enjoyment, and emotional distress. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial.

75. Consistent with WOODBRIDGE's history of flouting laws and County ordinances, Defendants acted intentionally, recklessly, negligently and with a conscious and malicious disregard to human life and safety in starting the Pickett Fire. This recklessness and conscious disregard were substantial factors in bringing about the Pickett Fire. This is despicable and oppressive conduct. Plaintiffs thus seek punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

**FOURTH CAUSE OF ACTION – VIOLATION OF HEALTH AND SAFETY CODE § 13007**

**(Against All Defendants)**

76. All previous paragraphs are incorporated into this cause of action.

77. Defendant MARFIL personally set the debris pile at 2343 Pickett Road on fire, while WOODBRIDGE and the business entity Defendants acted through him by directing and/or allowing him to set said debris pile on fire in violation of California Health and Safety Code section 13007.

78. Defendants acted willfully, negligently, and in violation of law. At the time of the fire, CalFIRE's suspension of burn permits in Napa County was in effect, and Defendants' outdoor burning also violated Chapter 8.24.020 of the Napa County Municipal Code and California Public Resources Code sections 4421 and 4422, among other laws, ordinances, and regulations.

79. The Pickett Fire escaped Defendants' control and spread to, entered, and damaged Plaintiffs' property, including their vineyards, crops, structures, and businesses.

//

80. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial including for lost profits from the business connected to Plaintiffs property.

81. Those Plaintiffs whose real property was under cultivation are also entitled to recover all reasonable attorneys' fees, expert fees, consultant fees, and litigation costs and expenses, as allowed under Code of Civil Procedure section 1021.9.

**FIFTH CAUSE OF ACTION – VIOLATION OF HEALTH AND SAFETY CODE § 13008**

**(Against All Defendants)**

82. All previous paragraphs are incorporated into this cause of action.

83. Defendants owned, controlled, and/or occupied the property at 2343 Pickett Road upon which the fire was burning.

84. Defendants allowed the fire burning upon their property to escape to Plaintiffs' property without exercising due diligence to control it. Defendants set fire to and maintained the burn pile during CalFIRE's burn-permit suspension and amid known high winds and dry vegetation, and failed to take reasonable measures to control the fire or to prevent it from escaping the intended burn area.

85. The Pickett Fire escaped Defendants' control and spread to, entered, and damaged Plaintiffs' property, including their vineyards, crops, structures, and businesses.

86. Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial including for lost profits from the business connected to Plaintiffs property.

87. Those Plaintiffs whose real property was under cultivation are also entitled to recover all reasonable attorneys' fees, expert fees, consultant fees, and litigation costs and expenses, as allowed under Code of Civil Procedure section 1021.9.

**VI.**

**PRAYER FOR RELIEF**

88. Plaintiffs seek the following damages in an amount according to proof at the time of trial:

(1) General and/or special damages determined on an individual basis according to proof;

//

(2) Loss of the use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal property;

(3) Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or any related displacement expenses;

(4) Evacuation expenses and alternate living expenses;

(5) Erosion damage to real property;

(6) Damages for emotional distress, fear, annoyance, disturbance, inconvenience, mental anguish, and loss of quiet enjoyment of property;

(7) Attorneys' fees, expert fees, consultant fees, and litigation costs and expense, as allowed under Code of Civil Procedure section 1021.9 and all other applicable law;

(8) Prejudgment interest from August 21, 2025;

(9) For punitive and exemplary damages in an amount sufficient to punish Defendants' conduct and deter similar conduct in the future; and

(10) Any and all other and further such relief as the Court shall deem proper, all according to proof.

## VII.

## JURY TRIAL DEMAND

89. Plaintiffs demand a jury trial on all causes of action for which a jury trial is available under the law.

Dated: November 12, 2026

SINGLETON SCHRIBER, LLP

By: ______________________

Gerald B. Singleton
Paul L. Starita
Jon Cadieux

Attorneys for Plaintiffs